GEORGE J. FUHLER v. GOHMAN & LEVINE CONSTRUCTION COMPANY ET AL., Defendants, ROYAL NEIGHBORS OF AMERICA, Appellant.— 142 S. W. (2d) 482.

Division One, July 23, 1940.

590

*Lendon A. Knight, David Levinson, S. Mayner Wallace* and *B. L. Liberman* for Royal Neighbors of America.

*William J. Becker* for Martin A. Federer.

*Claud D. Hall* for Harry Waldron.

*Walter Lambert, James H. Zipf* and *H. A.* and *C. R. Hamilton* for other respondents.

DOUGLAS, J.—This is an equitable mechanics' lien action brought under the statute (Sec. 3180, R. S. 1929, Ann. Stat., p. 5008) for the adjudication in one suit of the rights of all claimants against the premises at Gravois and Ellenwood Avenues in the City of St. Louis known as the Granada Theatre and Apartment Building. Suit was filed by George J. Fuhler, a subcontractor, for material furnished and for work and labor done on the building. Defendant, Gohman & Levine Construction Company, was also a subcontractor. Other parties included Harry Waldron, doing business as Waldron Wrecking Company and Martin A. Federer, both subcontractors, who are also lien claimants and who are respondents here.

While the suit was pending the property was foreclosed and at the foreclosure sale on or about July 8, 1930, it was purchased by the Royal Neighbors of America, a corporation. Thereafter, on November 6, 1931, the Royal Neighbors on its application was made a party defendant. A referee was appointed on November 2, 1932, to try all the issues and commenced hearing evidence on January 11, 1933. He filed his report on December 1, 1936, recommending judgments for the lien claimants, and on December 20, 1937, the court confirmed the report of the referee and entered judgment for $26,066.22 in favor of the plaintiff Fuhler; for $9,846.60 in favor of defendant Federer; for $1,570.80 in favor of defendant Waldron; such judgments to be secured by liens against the premises. Royal Neighbors, the owner of the premises, has appealed.

The general contract for the building was between the then owner and R. Levine & Company. The Gohman & Levine Construction Company had the original contract for the masonry, cement and concrete work. The project seems to have been to a certain extent a family affair as R. Levine was the president of the company which owned the property. He was also president of R. Levine & Company, the general contractor. He was also president of the Gohman & Levine Construction Company. Gohman was vice-president of the latter company and

in active charge of the building construction. Plaintiff Fuhler was a subcontractor under the Gohman & Levine Construction Company for certain of the masonry and concrete work. The contract, in the sum of $91,292, incorporated by reference certain plans and specifications for the work "prepared by E. P. Rupert of Chicago, Ill., architect, and signed by him." These plans and specifications were presented to the Building Commissioner of St. Louis at the time a building permit was applied for, but the permit was issued on the condition that they be revised. Immediately, the construction company was authorized to contract for extra work with subcontractors. In a few months the building permit was revoked. In order to obtain a new one a number of changes were made in the work completed at that time and in the plans for the future work. There was testimony that the plans and specifications called for in the contract were not used and that the work proceeded on the orders of Gohman. Gohman's authority is not questioned. These plans are not set out in the record before us. The plaintiff has treated the contract as abandoned and the referee has found this to be a fact from the evidence. The plaintiff fully completed his work and made demand for the balance due him which was refused.

This is not a case where the contractor has failed to complete his contract or has breached it and refused to fulfill it. The plaintiff has sued in *quantum meruit* for the reasonable value of his work and labor. Under the circumstances we do not know how else he might have brought his action. The law is well established that where a contractor is prevented by the other party from fulfilling a building contract he may recover reasonable compensation for his work and labor regardless of the contract price. [Kelly v. Rowane, 33 Mo. App. 440; Dempsey v. Lawson, 76 Mo. App. 522; McCullough v. Baker, 47 Mo. 401; Ehrlich v. The Aetna Life Insurance Co., 88 Mo. 249.]

This rule is applicable in this case. Here the contractor made no breach of his contract. He performed work demanded of him, different and beyond that contemplated in the old contract which was abandoned, under a new implied contract. The fact that the plaintiff may have set up as a book-keeping item the amount specified in the original contract and then added the extras does not alter the true situation.

It follows that the plaintiff's lien claim cannot be subject to the charge that it is not a "just and true" account required by the statute because it is in excess of the contract price of the abandoned contract. It was not only proper but it was necessary to itemize the account. [Schroeter Bros. Hdw. Co. v. Croatian "Sokol" Gymnastic Assn., 332 Mo. 440, 58 S. W. (2d) 995.] Similar charges against the lien filed by Federer may be disregarded for the same reasons.

Another charge against the account is based on the fact that in setting out the reasonable values of the items ten per cent for over-

head and another ten per cent for profit were included over the actual cost. There was ample testimony, undisputed, that the various charges as claimed were proper and reasonable. The case relied on by appellant, Bradley Heating Co. v. Thomas M. Sayman, etc. (Mo.), 201 S. W. 864, is not pertinent. In that case, Judge GRAVES purged from the judgment an allowance for the builders' profit. The evidence did not show that the profit was reasonable. However in a later case, Johnston v. Star Bucket Pump Co., 274 Mo. 414, 202 S. W. 1143, Judge GRAVES said he had not decided in the Bradley Heating Co. case, the question of the true rule on the measure of recovery where the owner had breached the contract. In the Johnston case it was shown that the prices charged were reasonable but in excess of the actual cost to the contractor. On this subject Judge GRAVES said: ''In the instant case the plaintiff by plain proof showed the reasonable value of the materials and labor furnished. That this value so shown was greater than plaintiff paid his subcontractors does not change the situation. *Plaintiff was entitled, in this action in quantum meruit, to the benefits of his bargain.* He is only required to show the reasonable value, as such is shown in any other action in *quantum meruit.* He is not precluded by what he pays for material and labor. . . . Proof of what he paid is of course admissible on the question of reasonable value, but is not conclusive thereof.'' While neither the opinion in the above case nor that in the Bradley Heating Co. case received a carrying vote except in the result we hereby approve and adopt what has just been quoted. Kansas City Structural Steel Co. v. Athletic Building Assn., 297 Mo. 615, 249 S. W. 922, is not in point because there an item of profit was claimed in addition to the reasonable value of the amount charged. In holding that such item could not be recovered in a *quantum meruit* action the decision relied on the Bradley Heating Co. case.

Where the contractor has been free from fault he should not be penalized so long as he can prove that a charge including a profit is reasonable. This must have been considered when the rule of the measure of damages was stated in Kelly v. Rowane, 33 Mo. App. 440, supra, relied on by Judge GRAVES. There it was held that when the contractor is prevented by the owner's fault from completing a building contract he may recover the *reasonable value* of his labor and material, regardless of the contract price, but if he abandons the contract he may recover only the *actual value* of the work and materials, not exceeding the contract price, less such damages as have resulted to the other party from the breach of the contract.

In Borden v. Mercer, 163 Mass. l. c. 9, 39 N. E. 413, also cited by Judge GRAVES, it was held that the reasonable value of labor may be more than its actual cost to the contractor and may be recovered. [See also Elder Mercantile Co. v. Ottowa Inv. Co., 100 Kan. 597, 165 Pac. 279.]

■ It is now settled that mechanics' lien statutes should be liberally construed. A subcontractor may make lienable charges for services in superintending the work. [Leach v. Bopp (Mo. App.), 12 S. W. (2d) 512; Fagan v. Brock Motor Car Co. (Mo. App.), 282 S. W. 135.]

In his lien account the plaintiff stated the last work performed by him was October 1, 1927, the date the theatre was opened, although there was testimony of his work being done up to October 6. If he continued to work as late as October 1, his lien is timely filed. This issue of fact is vigorously controverted. In addition to testimony of work being done in raising the fire wall and installing a brick partition wall after that date the plaintiff introduced an invoice showing a delivery of materials to the job as late as September 27. Witnesses for the appellant testified they last saw the plaintiff or his men working on the job in August, July, May, June and September. The referee saw the witnesses and heard their testimony. He found that the last work was done on October 1, or a few days later and that the lien was timely filed. The referee also found from the evidence that the lien of Federer was timely filed.

■ It is next argued that the plaintiff by his contract expressly waived any right to a lien. There were some specifications introduced in the case which contain a provision that a subcontractor would not be entitled to any lien. The referee concluded from all the evidence that these specifications were not the ones referred to either in the plaintiff's contract or in the contract between the owner and the contractor and that the plaintiff was not bound by them.

In his contract with Gohman & Levine Construction Co. the plaintiff agreed to take in part payment for his work $5,000 of second mortgage bonds on the premises. The appellant claims that to the extent of the amount of the bonds this agreement constitutes a waiver of a lien. Appellant cites Baumhoff v. St. Louis & K. Ry. Co., 171 Mo. 120; 71 S. W. 156, which holds that upon the performance of such an agreement no lien would have attached but where payment according to the contract was not made, then there was no waiver of the lien. This case in no way aids the appellant because in the case at bar the other party to the contract has failed to perform its part.

■ Respondent Waldron was a subcontractor under the plaintiff and furnished brick. It is not denied that the brick went into the building. The only objection to the finding in his favor is because it is against Fuhler personally, whereas the lien was against the Fuhler Bricklaying Company, a corporation, and his cross complaint was also against the corporation. There is no Fuhler corporation in this case. Fuhler admitted buying the brick from Waldron and putting it in the building. He further testified: ''I am the Fuhler Bricklaying Co.'' Waldron testified without objection that he furnished to Fuhler, the plaintiff the brick for the building. The evidence also shows that

payments were made by R. Levine & Co. to Fuhler by checks payable to the Fuhler Company which were accepted and cashed. The only party to raise this question is the appellant. In the trial before the referee, the appellant, as shown by its exceptions, took the position that the Fuhler Company furnished the work and labor but was overruled. The referee found in favor of Waldron and against Fuhler personally. Under the facts that finding is correct. We upheld lien accounts in Lee & Boutell Co. v. C. A. Brockett Cement Co., 341 Mo. 95, 106 S. W. (2d) 451, in a situation involving the same facts.

Waldron's right to a lien is not to be defeated because of this inconsistency between the pleadings and the proof. [St. Louis Concrete Products Mfg. Co. v. Walker (Mo. App.), 64 S. W. (2d) 131.] The cross-bill may be treated as amended to conform with the proof. [Arthur Maier Plumbing Co. v. Dieckmann (Mo. App.), 74 S. W. (2d) 495.]

The final decree and judgment was entered almost ten years from the date the suit was instituted. The very statement of this fact shocks the principles of justice. Yet, efficiency in the administration of justice requires the cooperation of all the parties and their counsel. The General Assembly has recognized the need of expedition in these cases. Usually persons both closely and remotely connected with the transaction are affected. Title to real estate is beclouded. Therefore it is provided that such action shall be ''prosecuted without unnecessary delay.'' [Sec. 3172, R. S. 1929, Ann. Stat., p. 5001.] The question arises on appellant's motion to dismiss whether the claimants have lost their rights because of delay in prosecuting this action. Mere delay in itself would not serve to forfeit the claimants' rights. The Legislature has recognized that some delay might be inevitable. It is only *unnecessary* delay that was prohibited.

Before a motion to dismiss because of unnecessary delay may be sustained, such must be supported by evidence. [Seidel Lumber Co. v. Hydraulic Press Brick Co. (Mo. App.), 288 S. W. 979.] There was some delay in obtaining service on the parties because of foreign residence. Alias and pluries summons were issued. Then the attorney for the defendants (who is no longer in the case) requested that the case be not pushed. Plaintiff's attorney testified that he tried persistently to get the defendants to answer until finally he was forced to take a default judgment against them. Then foreclosure proceedings were had and the property was sold to the appellant. Appellant waited for more than a year to file its application to be made a party defendant. Shortly thereafter a referee was appointed and some three years later he filed his report. The record shows procrastination by all parties but the referee found there was no proof of unnecessary delay on the part of respondents. While the duty to prosecute a suit with diligence rests upon the party who institutes it, yet the appellant as defendant made no move to hasten the movement of the

case as it may have done under the law or under the specific provision of the statute. Section 3184, R. S. 1929, Ann. Stat., p. 5013, declares that the court may speed the action on its own motion or at the instance of *either* party. This section should be read together with the other section. The referee found there was no evidence to support the appellant's motion. The trial court has sustained the referee. Under the circumstances of the case we must presume the trial court has ruled correctly.

The liens are not subject to the attacks which the appellant makes on them. The equities are on the side of the claimants. The evidence was sufficient to support the liens and the findings below. The amounts charged were found to be reasonable. The appellant has failed to show any reversible error. The judgment is for the right parties and is just. The judgment is affirmed. All concur.